**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:24-cv-22142-DPG**

FANNY B. MILLSTEIN and
MARTIN KLEINBART,

     Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

     Defendant.

_____/

**DEFENDANT WELLS FARGO BANK, N.A.'S**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................................................... 1

Factual Allegations .......................................................................................................................... 2

Argument .......................................................................................................................................... 5

I.      Standard of Review ........................................................................................................... 5

II.     Counts I and II Fail to State Claims for Aiding and Abetting Liability ............................ 6

    A.   Plaintiffs' conclusory allegations that Wells Fargo had actual knowledge are insufficient. ........... 7

       i.    Plaintiffs' allegations regarding atypical transactions are insufficient to establish actual knowledge. ........................................................................................................... 9

      ii.   Plaintiffs' allegations concerning Wells Fargo's failure to adhere to policies and regulations do not establish actual knowledge. ................................................. 11

    B.   Plaintiffs Fail to Allege That Wells Fargo Provided Substantial Assistance ................................. 12

III.    Plaintiffs Fail to State a Claim for Unjust Enrichment in Count III ............................... 15

    A.   Plaintiffs' unjust enrichment claim fails because the banking fees here are not benefits that were paid by Plaintiffs. ................................................................................................................... 15

    B.   The unjust enrichment claim fails because adequate consideration exists ................................... 17

Conclusion ..................................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajwani v. Carnival Corp.*,
2024 U.S. Dist. LEXIS 51257 (S.D. Fla. Mar. 22, 2024) ........................................................8

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ....................................................................................6

*Angell v. Allergan Sales, LLC*,
2019 U.S. Dist. LEXIS 142768 (M.D. Fla. Aug. 22, 2019) ....................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................5

*Banc of Am. Sec. LLC v. Stott*,
2005 U.S. Dist. LEXIS 58570 (S.D. Fla. Aug. 29, 2005) ......................................................6

*Berman v. Morgan Keegan & Co.*,
455 F. App'x 92 (2d Cir. 2012) ..................................................................................12

*Biondi v. Branch Banking & Trust Co.*,
2018 U.S. Dist. LEXIS 147363 (S.D. Fla. Aug. 28, 2018) ...........................................17–18

*Chang v. JPMorgan Chase Bank*,
845 F.3d 1087 (11th Cir. 2017) ............................................................................12–13

*Chavez v. Am. Coach Lines of Miami, Inc.*,
2010 U.S. Dist. LEXIS 162640 (S.D. Fla. Aug. 19, 2010) ....................................................5

*City of Miami v. Eli Lilly & Co.*,
2022 U.S. Dist. LEXIS 11696 (S.D. Fla. Jan. 21, 2022) .....................................................16

*Coffey v. WCW & Air, Inc.*,
2018 U.S. Dist. LEXIS 148122 (N.D. Fla. Aug. 30, 2018) ..................................................16

*Cutler v. Voya Fin., Inc.*,
2018 U.S. Dist. LEXIS 144521 (S.D. Fla. Aug. 23, 2018) ....................................................6

*Davis v. Coca-Cola Bottling Co. Consol.*,
516 F.3d 955 (11th Cir. 2008) ......................................................................................5

*Freeman v. JPMorgan Chase Bank, N.A.*,
675 Fed. Appx. 926 (11th Cir. 2017) ...........................................................................13

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*,
    2015 U.S. Dist. LEXIS 194142 (S.D. Fla. Aug. 19, 2015)....................................................11

*Herrera v. TD Bank, N.A.*,
    682 F.Supp.3d 1271 (S.D. Fla. 2023) ........................................................................6

*Isaiah v. JPMorgan Chase Bank, N.A.*,
    2017 U.S. Dist. LEXIS 190051 (S.D. Fla. Nov. 15, 2017)................................................9, 11

*Jackson v. Bellsouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) ...............................................................................5

*Lamm v. State Street Bank & Trust*,
    749 F.3d 938 (11th Cir. 2014) .................................................................................9

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .........................................................................10

*Meridian Trust Co. v. Batista*,
    2018 U.S. Dist. LEXIS 166556 (S.D. Fla. Sept. 24, 2018) ...............................................9

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,
    714 F.3d 1234 (11th Cir. 2013) ..............................................................................15

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ..............................................................................15

*O'Halloran v. First Union Nat. Bank of Florida*,
    350 F.3d 1197 (11th Cir. 2003) ................................................................................7

*Omnipol AS v. Multinational Defense Services LLC*,
    32 F. 4th 1290 (11th Cir. 2022) ...............................................................6, 15, 16, 17

*Otto Candies, LLC v. Citigroup, Inc.*,
    2023 U.S. Dist. LEXIS 168612 (S.D. Fla. Aug. 25, 2023)................................................10

*In re Palm Beach Finance Partners, L.P.*,
    517 B.R. 310 (Bankr. S.D. Fla. 2013)......................................................................13

*Pearson v. Deutsche Bank AG*,
    2023 U.S. Dist. LEXIS 70367 (S.D. Fla. Apr. 22, 2023) .............................................13, 14

*Peixuan Wang v. Revere Capital Mgmt., LLC*,
    2023 U.S. Dist. LEXIS 26607 (S.D. Fla. Feb. 15, 2023)..................................................7

*Peng v. Mastroianni*,
    2020 U.S. Dist. LEXIS 199862 (S.D. Fla. Oct. 26, 2020)................................................5

*Peng v. Mastroinni*,
    2021 U.S. Dist. LEXIS 86220 (S.D. Fla. May 3, 2021) ........................................................8

*Perlman v. Wells Fargo Bank, N.A.*,
    559 F. App'x 988 (11th Cir. 2014) ..................................................................................9

*Rosenfeld Gallery, LLC v. Truist Bank*,
    2024 U.S. Dist. LEXIS 34147 (S.D. Fla. Feb. 28, 2024).............................................7

*Rusty115 Corp. v. Bank of Am., N.A.*,
    2023 U.S. Dist. LEXIS 165584 (S.D. Fla. Sept. 18, 2023) .........................................6

*Tuckman v. Wells Fargo Bank, N.A.*,
    2020 U.S. Dist. LEXIS 256846 (S.D. Fla. Mar. 25, 2020)..........................................7

**Rules**

Federal Rule of Civil Procedure 9(b)..................................................................6, 7, 15, 17

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss with prejudice the First Amended Class Action Complaint ("Amended Complaint") filed by Plaintiffs Fanny B. Millstein ("Millstein") and Martin Kleinbart ("Kleinbart") (Millstein and Kleinbart are referred to collectively as "Plaintiffs").

## **INTRODUCTION**

This is the second of two lawsuits before this Court alleging the same facts and seeking from the same defendant the same damages suffered by the same investors.  This putative class action is Plaintiffs Fannie Millstein and Martin Kleinbart's attempt to hold Wells Fargo responsible for the acts of purported Ponzi schemers Marshall Seeman, Eric Holtz, and Brian Schwartz. Plaintiffs target Wells Fargo because it provided routine banking services to the alleged schemers and their companies, but they do not allege facts showing that Wells Fargo or any of its employees operated or actually knew about the scheme, much less benefited from it.  Rather, Plaintiffs contend Wells Fargo or its employees *should have known* what the schemers were allegedly doing by virtue solely of its position as a provider of banking services.  According to Plaintiffs, who do not allege they were Wells Fargo customers, Wells Fargo should nonetheless be held liable to them under theories of aiding and abetting fraud and breach of fiduciary duty and unjust enrichment because it did not protect them from the alleged fraud.  This theory fails to state a claim as a matter of well-settled law, and the Amended Complaint should therefore be dismissed.

To state viable claims for aiding and abetting, Plaintiffs must plead facts showing that Wells Fargo had "actual knowledge" of the frauds perpetrated against them.  Merely stating that Wells Fargo must have known, or should have known, about the scheme due to purportedly atypical transactions in bank accounts, or that Wells Fargo did not follow applicable standards of care, does not establish the requisite *actual* knowledge.  To the contrary, Eleventh Circuit precedent requires dismissal of aiding and abetting claims that are based solely on allegations of

atypical transactions and red flags.   In addition, Plaintiffs fail to allege that Wells Fargo substantially assisted the Ponzi scheme; Plaintiffs only allege that Wells Fargo failed to act, which is insufficient to state a claim under Florida law.

Lastly, with respect to their unjust enrichment claim sounding in fraud, Plaintiffs fail to state a claim to disgorge the fees Wells Fargo earned for the banking services it provided.  Plaintiffs fail to allege with particularity that Wells Fargo received a direct benefit that would be inequitable for Wells Fargo to retain.  Quite the opposite, Plaintiffs allege that the Para Longevity Companies (the "PLCs"), through which the Ponzi scheme was allegedly conducted, paid Wells Fargo account services fees, which do not qualify as a direct benefit as a matter of law.  Plaintiffs also have not shown it would be unjust for Wells Fargo to retain the fees, which Wells Fargo earned in exchange for the banking services it provided without knowledge of the alleged Ponzi scheme.

For these reasons, all of Plaintiffs' claims should be dismissed with prejudice.

## **FACTUAL ALLEGATIONS[1]**

This lawsuit stems from a Ponzi scheme orchestrated by Marshall Seeman ("Seeman"), Eric Holtz ("Holtz"), and Brian Schwartz ("Schwartz," collectively with Seeman and Holtz referred to as the "Perpetrators").  Am. Compl. ¶ 2.  Seeman and Holtz created the PLCs "to solicit funds from investors through the sale of Notes purportedly to fund the purchase and payment of premiums for [Stranger-Originated Life Insurance] policies." Am. Compl. ¶¶ 33, 150; *see also* Am. Compl. ¶¶ 3, 4.  The Perpetrators, through the PLCs, promised the investors "that the proceeds from the death benefits of STOLIs would be used to fund the interest payments due to those investors and eventually return their principal."  Am. Compl. ¶ 4.  The Perpetrators instead used

---

[1] For this Motion, Wells Fargo is required to accept as true Plaintiffs' allegations that the Perpetrators operated a Ponzi scheme.  Wells Fargo does not concede that Plaintiffs can prove as much if the case moves past the pleading stage.

2

the funds to "to pay existing investors, and further looted significant sums through improper, exorbitant, or fictitious fees and expenses." Am. Compl. ¶ 5.  The Ponzi scheme allegedly resulted in the loss of more than $300 million by investors.  Am. Compl. ¶¶ 1, 161.

The PLCs maintained twenty-nine accounts at Wells Fargo, the first of which was opened in 2011.  Am. Compl. ¶ 143.  These accounts produced "interest, transfer fees, service fees, transaction fees and online banking fees," Am. Compl. ¶ 202, *see also id.*  ¶¶ 186, 196, in exchange for "banking services" provided by Wells Fargo."  Am. Compl. ¶ 201.  The alleged fraudulent transactions within the PLCs' accounts at Wells Fargo, and the "red flags" identified by Plaintiffs, began in 2015.  *See, e.g.*, Am. Compl. ¶¶ 144, 148, 157, 158, 161.

Millstein purchased two notes from the PLCs: the first in the amount of $125,000 on January 28, 2016, with a maturity date of January 28, 2019, and the second in the amount of $101,037.10 on January 13, 2017, with a maturity date of January 13, 2020.  Am. Compl. ¶ 163. Kleinbart purchased the following five notes: (i) $100,000 on September 14, 2017, with a maturity date of September 14, 2022; (ii) $100,000 on October 23, 2018, with a maturity date of October 23, 2023; (iii) $100,000 on February 8, 2019, with a maturity date of February 8, 2024; (iv) $112,920 on February 26, 2019, with a maturity date of February 26, 2024; and (v) $158,000 on September 12, 2019, with a maturity date of September 12, 2021.  Plaintiffs contend that the PLCs do not have the assets to pay back the money they are owed even though all notes are fully matured.  Am. Compl. ¶ 168.

The Ponzi scheme was "uncovered" in 2021 when the Florida Office of Financial Regulations (the "OFR") commenced a legal action, after which a receiver was appointed by court order.  Am. Compl. ¶ 11.

Plaintiffs claim that Wells Fargo disregarded red flags and atypical account activity occurring in the PLCs' accounts. Specifically, Plaintiffs point to "repetitive or unusual fund transfer activity," "fund transfers sent or received from the same person to or from different accounts," "transactions inconsistent with the account holder's business," "large fund transfers sent in round dollar amounts," and "transacting businesses sharing the same address" all as atypical account activity. Am. Compl. ¶ 161. Plaintiffs further allege that Wells Fargo knew about the Ponzi scheme because of its duties under the Bank Secrecy Act and anti-money laundering statutes and regulations, such as "Know Your Customer" obligations. Am. Compl. ¶¶ 77, 78, 80, 136, 140, 142, 144, 151. From these accusations, Plaintiffs then conclude that Wells Fargo had knowledge of the Ponzi scheme. Am. Compl. ¶¶ 45, 46, 181, 182, 183, 184, 191.

Plaintiffs claim that Wells Fargo substantially assisted the Ponzi scheme through a series of inactions, including Wells Fargo's failure to identify red flags, Am. Compl. ¶ 140, not requiring accounts to be opened in person, Am. Compl. ¶ 145, "failure to follow basic due diligence practices and comply with the applicable KYC regulations," Am. Compl. ¶ 151, and doing "nothing to stop the Scheme from continuing," Am. Compl. ¶ 155. Plaintiffs also allege that Wells Fargo employees pre-filled account opening forms for the PLCs for Seeman's review and execution. Am. Compl. ¶¶ 135, 137, 149.

Based on these allegations, Plaintiffs claim that Wells Fargo aided and abetted Seeman and Holtz's breach of fiduciary duties (Count I); aided and abetted Seeman and Holtz's fraud (Count II); and was unjustly enriched by account fees it earned on the PLCs' bank accounts (Count III). For the reasons discussed below, the Amended Complaint should be dismissed with prejudice because the Amended Complaint fails to state a plausible claim for relief.

**ARGUMENT**

I.      **Standard of Review**

A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (noting that factual allegations must raise a right to relief above the speculative level).  For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.  *Id.*  "A complaint must also contain enough facts to indicate the presence of the required elements."  *Chavez v. Am. Coach Lines of Miami, Inc.*, 2010 U.S. Dist. LEXIS 162640, at *4 (S.D. Fla. Aug. 19, 2010).

Although a court must accept all well-pleaded factual allegations as true, it need not accept "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts."  *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" and dismissal is required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id.* at 678–82.  Further, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *see also Peng v. Mastroianni*, 2020 U.S. Dist. LEXIS 199862, at *17 (S.D. Fla. Oct. 26, 2020) (dismissing aiding and abetting claims, as plaintiff did not "present any facts from which a claim

for aiding and abetting can be plausibly supported. Conclusory statements are entitled to little weight and will not prevent dismissal.").

The pleading burden is even greater when claims of fraud are involved, which "must comply with Rule 9(b)'s heightened pleading standards." *Banc of Am. Sec. LLC v. Stott*, 2005 U.S. Dist. LEXIS 58570, at *13 (S.D. Fla. Aug. 29, 2005); *see also* Fed. R. Civ. P. 9(b). Similarly, claims that "sound in fraud," such as unjust enrichment and breach of fiduciary duty, must meet the heightened 9(b) standard. *See Omnipol AS v. Multinational Defense Services LLC*, 32 F. 4th 1290, 1307 n.11 (11th Cir. 2022); *Cutler v. Voya Fin., Inc.*, 2018 U.S. Dist. LEXIS 144521, at *16, 17 (S.D. Fla. Aug. 23, 2018); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065–67 (11th Cir. 2007) (heightened pleading standard applies to claims for aiding and abetting). A complaint satisfies this heightened standard under 9(b) only when claims are pled "with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol*, 32 F. 4th 1307.

## II.   Counts I and II Fail to State Claims for Aiding and Abetting Liability

In Counts I and II, Plaintiffs claim that Wells Fargo, despite having no banking relationship with them, should nonetheless be liable to them because it allegedly aided and abetted the Perpetrators' fraud and breach of fiduciary duty. Am. Compl. ¶¶ 177–99. In essence, these claims seek to hold Wells Fargo liable for failing to protect Plaintiffs from a scheme perpetrated by others. But "'Florida, like other jurisdictions, recognizes that as a general matter, a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship' . . . [and] generally do[es] not owe non-customers a duty to protect them from fraud." *Herrera v. TD Bank, N.A.*, 682 F. Supp. 3d 1271, 1275 (S.D. Fla. 2023) (quoting *Chang v. JPMorgan Chase Bank*, 845 F.3d 1087, 1094 (11th Cir. 2017)); *Rusty115 Corp. v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 165584, at *14 (S.D. Fla. Sept. 18, 2023) ("[B]anks ordinarily do not owe a fiduciary duty to their

6

own customers, and so it follows that a bank would also not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account." (internal citation omitted)).  Indeed, "a bank . . . has the right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds." *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1205 (11th Cir. 2003).  Plaintiffs attempt to plead around this well-settled law by asserting, without any factual support, that Wells Fargo knowingly assisted the fraud.

To state an aiding and abetting claim, Plaintiffs must allege "'(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor.'"  *Tuckman v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 256846, at *13 (S.D. Fla. Mar. 25, 2020) (citing *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012)).  Plaintiffs fail to state a claim in Counts I and II because they have not alleged facts establishing these elements.

### A.     Plaintiffs' conclusory allegations that Wells Fargo had actual knowledge are insufficient.

When a claim for aiding and abetting is asserted against a bank, "knowledge of the underlying fraud is the crucial element."  *Rosenfeld Gallery, LLC v. Truist Bank*, 2024 U.S. Dist. LEXIS 34147, at *10 (S.D. Fla. Feb. 28, 2024) (quoting *Rusty115 Corp. v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 165584 (S.D. Fla. Sep. 18, 2023)).  This means that a plaintiff must plead the underlying fraud with the specificity required by Rule 9(b), and must plead that the bank had actual knowledge of that fraud.  *See Peixuan Wang v. Revere Capital Mgmt., LLC*, 2023 U.S. Dist. LEXIS 26607, at *12, 13 (S.D. Fla. Feb. 15, 2023) ("To satisfy the second element of an aiding and abetting fraud claim, a plaintiff must allege that the defendant had 'actual knowledge' of the underlying fraud.");  *Tuckman*, 2020 U.S. Dist. LEXIS 256846, at *15 (dismissing aiding and

7

abetting claims that "fail[] to connect Wells Fargo with the fraud against him") (emphasis added). Count II fails because Plaintiffs have not pled that Wells Fargo had actual knowledge of the underlying torts perpetrated against them.

The Amended Complaint repeatedly asserts in conclusory fashion that Wells Fargo and its employees "knew" about the alleged scheme.  Am. Compl. ¶¶ 45, 46, 181, 182, 183, 184, 191. Such conclusory allegations of "knowledge," however, are legally insufficient as a matter of law. *See Peng v. Mastroinni*, 2021 U.S. Dist. LEXIS 86220, at *3 (S.D. Fla. May 3, 2021)  ("The conclusory statement [t]he Regional Center and the Developer, with knowledge of Mastroianni and the General Partner's breaches of fiduciary duty, aided and abetted, provided substantial assistance, and encouraged those breaches of duty' . . . does not present any facts from which a claim for aiding and abetting can be plausibly supported."); *Ajwani v. Carnival Corp.*, 2024 U.S. Dist. LEXIS 51257, at *7 (S.D. Fla. Mar. 22, 2024) (conclusory allegations without any specific detail about *how* defendant knew or should have known are insufficient to plausibly allege actual or even constructive notice); *Angell v. Allergan Sales, LLC*, 2019 U.S. Dist. LEXIS 142768, at *30 (M.D. Fla. Aug. 22, 2019) ("While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a reasonable inference of actual knowledge regarding the underlying fraud.") (citation and alterations omitted).

Plaintiffs' only *specific* factual allegations concerning Wells Fargo's purported knowledge of the PLCs' true business activities are sparse and bare.  Plaintiffs allege that (i) when Wells Fargo opened the accounts for the PLCs, the listed industry for each included finance, insurance, real estate, rental, leasing, professional, scientific, and professional services, Am. Compl. ¶ 143; (ii) "Seeman never provided answers regarding the sources of revenues of the PLCs," Am. Compl. ¶

138; and (iii) "Seeman described each of those PLCs as 'fund that buys life policies'" in response to an email from Wells Fargo, Am. Compl. ¶ 139.  None of these allegations comes anywhere close to showing that Wells Fargo had actual knowledge that the PLCs were being used to perpetrate a Ponzi scheme.

Unable to allege direct involvement in fraudulent activity or specific facts showing that Wells Fargo employees were aware of illegal activity, Plaintiffs resort to relying on allegedly atypical transactions, and supposed deviations from banking policies and regulations, to establish actual knowledge.  These allegations similarly fail.

> **i.    Plaintiffs' allegations regarding atypical transactions are insufficient to establish actual knowledge.**

Allegations that a banking customer engaged in transactions that were unusual or supposedly generated "red flags" are insufficient as a matter of law to establish the knowledge element of an aiding and abetting claim.  "Alleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014); *Isaiah v. JPMorgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 190051, at *7 (S.D. Fla. Nov. 15, 2017).  "To be liable, the bank would have had to have actual knowledge of [its customer's] fraudulent activities," and "allegations [of atypical banking transactions] simply fail to make that 'plausible.'" *Meridian Trust Co. v. Batista*, 2018 U.S. Dist. LEXIS 166556, at *14 (S.D. Fla. Sept. 24, 2018) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (holding that allegations of "atypical transactions and procedural oddities, including: [the schemer's] opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, [and] large cash deposits and

withdrawals" did not raise "a plausible inference that [the bank] actually knew that [the schemer] was engaging in fraudulent activity").

Plaintiffs repeatedly allege in the Amended Complaint that the Wells Fargo bank accounts used to perpetrate the fraud contained atypical transactions, but under well-established Florida law, those allegations are simply insufficient to show actual knowledge.  Plaintiffs point to alleged red flags such as "repetitive or unusual fund transfer activity," "fund transfers sent or received from the same person to or from different accounts," "transactions inconsistent with the account holder's business," "large fund transfers sent in round dollar amounts," and "transacting businesses sharing the same address."  Am. Compl. ¶ 161.  These are exactly the types of atypical transactions that have been held *not* to establish the requisite actual knowledge under Florida law.  *See, e.g., Lawrence*, 455 F. App'x at 907 (holding allegations of "numerous deposits, withdrawals, and wire transfers involving large amounts of money" and claims that transactions were "atypical," and therefore the bank "should have known" of the scheme were "insufficient under Florida law to trigger liability"); *Otto Candies, LLC v. Citigroup, Inc.*, 2023 U.S. Dist. LEXIS 168612, at *22–23 (S.D. Fla. Aug. 25, 2023) (plaintiffs did not sufficiently allege that Citigroup had actual knowledge by merely suggesting that Citigroup "disregarded red flags or atypical activities or transactions").

Further, even if such alleged red flags could establish actual knowledge as a matter of law, they must be viewed in the context of other allegations.  The PLCs opened 29 accounts at Wells Fargo, which remained active for over 10 years.  Am. Compl. ¶¶ 143, 144.  Over this lengthy period of time involving many accounts, the transfers, withdrawals, and account activity referenced in the Amended Complaint would hardly be unusual or suspicious.  The red flags alleged by Plaintiffs are simply insufficient to show actual knowledge *of a Ponzi scheme*.

      **ii.**     **Plaintiffs' allegations concerning Wells Fargo's failure to adhere to policies and regulations do not establish actual knowledge.**

Plaintiffs assert that Wells Fargo "knew" about the Ponzi scheme because of its duties under the Bank Secrecy Act and anti-money laundering statutes and regulations, such as "Know Your Customer" obligations. Am. Compl. ¶¶ 77, 78, 80, 136, 140, 142, 144, 151. This type of conclusory allegation of knowledge does not suffice in Ponzi scheme cases against banks in this Circuit, and the Court should reject it here.

Plaintiffs' speculation about whether Wells Fargo complied with its Bank Secrecy Act, Know Your Customer, or anti-money laundering statutory or regulatory duties, or its own internal policies and procedures implementing those requirements, cannot support a claim for aiding and abetting liability, even at the pleading stage. In *Isaiah v. JPMorgan Chase Bank, N.A.*, for example, the plaintiff alleged that the bank aided and abetted the Ponzi schemers' torts because it "failed to adhere to an appropriate standard of care or to follow relevant policies, procedures, or regulations." 2017 U.S. Dist. LEXIS 190051, at *7 (S.D. Fla. Nov. 14, 2017). Unpersuaded, the court held that these allegations were insufficient for a claim of aiding and abetting because Florida law requires that aiding and abetting claims "sufficiently establish—or allow the fair inference— that the defendant had actual knowledge of the underlying tort." *Id.*

Similarly, in *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, the defendant bank offered the customer plaintiff online banking services. 2015 U.S. Dist. LEXIS 194142 (S.D. Fla. Aug. 19, 2015). Plaintiff refused and insisted that all transactions be conducted through physical checks and documents. *Id.* The bank nonetheless "permitted a non-signatory with no actual or apparent authority to view account balances and conduct transactions through online banking," including the online transfer of almost $4 million to the perpetrator's account. *Id.* at *1. The plaintiff argued that by failing to exercise reasonable care in verifying the validity of unusual

transfers in the customer's account, the bank knowingly aided and abetted the theft.  The court rejected plaintiff's argument of actual knowledge, finding that "merely providing access to Plaintiff's accounts in contravention of reasonable care, due diligence, and industry standards does not give rise to an inference of actual knowledge of [the perpetrator's] purportedly fraudulent scheme." *Id.* at \*4.  The allegations supported the conclusion that the bank "knew of the transfers themselves, but not necessarily that [the bank] was aware that the transfers were part of a fraudulent scheme." *Id*.

The same is true here.  At most, Plaintiffs' allegations aver that Wells Fargo knew or should have been aware of the transactions themselves, but *not* that Wells Fargo knew the transactions were part of a Ponzi scheme.  There are no allegations that the policies and procedures followed by Wells Fargo with respect to the accounts at issue alerted it to the existence of a Ponzi scheme.

At bottom, statutory and regulatory schemes like 'anti-money laundering and 'Know Your Customer' rules do not create a monitoring duty running to third parties.  Plaintiffs do not allege, nor could they under applicable law, that Wells Fargo had actual knowledge of wrongdoing by means of these obligations.  And, even if such a monitoring obligation was identified, Plaintiffs still fail to allege that Wells Fargo's monitoring led it to acquire *actual knowledge* of the scheme. *See Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95–96 (2d Cir. 2012) (plaintiff failed to allege a monitoring obligation would have alerted defendant to the alleged fraud).  Thus, Plaintiffs' attempts to plead the actual knowledge element of their aiding and abetting claims fail.

### B.    Plaintiffs Fail to Allege That Wells Fargo Provided Substantial Assistance.

Plaintiffs' aiding and abetting claims also fail because Plaintiffs have not alleged, and cannot allege, that Wells Fargo substantially assisted the alleged Ponzi scheme.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d

1087, 1098 (11th Cir. 2017) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)). Importantly, there must be "an *affirmative* step on the part of the aider-and-abettor that is a 'substantial factor' in causing the breach of duty." *In re Palm Beach Finance Partners, L.P.*, 517 B.R. 310 (Bankr. S.D. Fla. 2013) (emphasis added). Allegations of "inaction" are insufficient to show substantial assistance. *See Pearson v. Deutsche Bank AG*, 2023 U.S. Dist. LEXIS 70367 (S.D. Fla. Apr. 22, 2023). Indeed, "[m]ere inaction 'constitutes substantial assistance *only if* the defendant owes a fiduciary duty directly to the plaintiff.'" *Freeman v. JPMorgan Chase Bank, N.A.*, 675 Fed. Appx. 926, 934 (11th Cir. 2017) (emphasis added) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006)).

The Amended Complaint merely alleges failures and inaction by Wells Fargo, not affirmative acts that could plausibly meet the substantial assistance standard.[2] *See, e.g.*, Am. Compl. ¶ 79 (noting Wells Fargo's "abject failures" enabled the scheme); Am. Compl. ¶ 140 ("Wells Fargo should have identified these disclosures as a red flag"); ¶ 144 ("Wells Fargo's bankers ignored their due diligence obligations"); Am. Compl. ¶ 145 ("Wells Fargo did not require Seeman to open the accounts in person"); Am. Compl. ¶ 151 (Wells Fargo "fail[ed] to follow basic due diligence practices and comply with the applicable KYC regulations"); Am. Compl. ¶ 155 ("Wells Fargo did nothing to stop the Scheme from continuing"); Am. Compl. ¶ 161 (listing red flags "which Wells Fargo must have known but did nothing about and/or substantially assisted in furtherance of the Scheme"). The only alleged affirmative acts by Wells Fargo concerning the PLCs are that employees pre-filled account application forms for Seeman's review and execution

---

[2] The Amended Complaint has lengthy allegations about Wells Fargo's position as trustee for the ILITs beginning in 2009, *see* Am. Compl. ¶¶ 50–69, but none alleging that Plaintiffs and the purported class are seeking damages for a Ponzi scheme conducted through the ILITs. To the contrary, Plaintiffs and the purported class seek damages for a Ponzi scheme allegedly conducted through the PLCs. *See* Am. Compl. ¶¶ 16, 35, 143, 170, 178, 189(a), 202.

when the PLCs' accounts were opened beginning in 2011.  Am. Compl. ¶¶ 135, 137, 146, 148.  But such allegations are disconnected entirely from the Ponzi scheme, which Plaintiffs allege began in 2015 when "later investors' funds [started] being used to pay earlier investors' interest or principal payments."  Am. Compl. ¶ 158.  Indeed, Plaintiffs' only specific allegations concerning purportedly fraudulent activity within the accounts at Wells Fargo concern transactions beginning in 2015.  *See, e.g.*, Am. Compl. ¶¶ 157, 158, 161.  And none of the "red flags" identified by Plaintiffs occurred earlier than 2015.  *See* Am. Compl. ¶¶ 144, 148.

By way of contrast, the allegations of passive ignorance in the Amended Complaint stand in stark relief to the allegations in *Pearson,* where it was alleged that defendants affirmatively "began investigating account activity," discovered the fraud through such investigation, "and then did nothing about the fraud *after* they investigated and learned of the fraud."  *Pearson*, 2023 U.S. Dist. LEXIS at *8.  There were "email exchanges and communications between bank employees…regarding the improper use of custodial accounts," and the bank employees went so far as to instruct the perpetrators on "how to circumvent Defendants' anti-money laundering and 'Know Your Customer' rules."  *Id.* at *3.  Further, while the SEC entered an order finding that the wrongdoers violated securities laws, the bank waited over a year to terminate its relationship with the related entities.  *Id.* at *4.  Based on the cumulative weight of this knowledge and affirmative acts, the court found that the plaintiffs had sufficiently alleged the bank provided substantial affirmative assistance.

Unlike in *Pearson*, Plaintiffs' allegations here only show *inaction*, if anything, on the part of Wells Fargo.  The one affirmative act Plaintiffs allege here—pre-populating account applications for customer review—has little or nothing to do with the Ponzi scheme that allegedly harmed Plaintiffs.  It would be absurd to conclude Wells Fargo provided substantial assistance to

a fraudulent scheme by performing ministerial functions on account opening documentation long before the fraud allegedly occurred.  Thus, these allegations are insufficient to establish that Wells Fargo provided "substantial assistance."  As a result, Plaintiffs' aiding and abetting claims fail as a matter of law.

**III.**   **Plaintiffs Fail to State a Claim for Unjust Enrichment in Count III**

In Count III, Plaintiffs rely on the equitable theory of unjust enrichment to seek disgorgement of interest and account services fees Wells Fargo collected from the PLCs.  Am. Compl. ¶¶ 200–204.  This claim fails because: (1) Plaintiffs have not alleged with particularity that they paid Wells Fargo directly nor through an intermediary; and (2) the fees that Wells Fargo earned on the accounts were bargained for in a transaction that had adequate consideration.

**A.**   **Plaintiffs' unjust enrichment claim fails because the banking fees here are not benefits that were paid by Plaintiffs.**

In Count III, Plaintiffs seek disgorgement of interest and account services fees Wells Fargo collected from the PLCs.  Am. Compl. ¶¶ 200–204.  To state an unjust enrichment claim, Plaintiffs must plead facts showing that (i) they conferred a direct benefit on Wells Fargo; (ii) Wells Fargo had knowledge of the benefit; (iii) Wells Fargo accepted or retained the benefit conferred; and (iv) the circumstances are such that it would be inequitable for Wells Fargo to retain the benefit without paying value for it.  *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013).  In addition, when an unjust enrichment claim "'sound[s] in fraud,'" it is "subject to Rule 9(b)'s requirements."  *Omnipol AS v. Multinational Defense Services LLC*, 32 F. 4th 1298, 1307 n.11 (11th Cir. 2022) (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019)); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (noting that Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the allegedly fraudulent behavior).

15

Count III fails at the first element of unjust enrichment, as there is no allegation that Wells Fargo received a direct benefit *from Plaintiffs* that could form the basis for an unjust enrichment claim. "Florida law requires that the plaintiff 'directly confer' a benefit in order to state a claim for unjust enrichment[.]" *City of Miami v. Eli Lilly & Co.*, 2022 U.S. Dist. LEXIS 11696, at *29 (S.D. Fla. Jan. 21, 2022) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)). But "a party is not directly benefited by the plaintiff when the only benefit it received was for performing a service for a different party under a different, albeit arguably related, contract." *Coffey v. WCW & Air, Inc.*, 2018 U.S. Dist. LEXIS 148122, at *2 (N.D. Fla. Aug. 30, 2018); *see also Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) (holding that a home purchaser could not sue the developer for unjust enrichment on the theory that the 1.5% fee paid to the developer constituted a direct benefit because it was the seller that passed on the fee to the developer under a separate contract).

Here, Wells Fargo "earned income from fees and from its possession of deposits," Am. Compl. ¶¶ 186, 196, and received "interest transfer fees, service fees, transaction fees, and online banking fees." Am. Compl. ¶ 202. But it was not Plaintiffs that paid these fees; instead, they were paid by third parties, namely the PLCs, as the account holders. Thus, the benefits Wells Fargo received were for "performing a service for a different party," namely "provid[ing] banking services to the PLCs." Am. Compl. ¶ 201. Accordingly, the fees and income that Wells Fargo earned on the PLCs' accounts are not considered direct benefits conferred on Wells Fargo by Plaintiffs.

Nor can Plaintiffs overcome their pleading failure by claiming that their funds were indirectly paid to Wells Fargo. The plaintiffs in *Omnipol* attempted such an argument: there, the complaint alleged that "some portion" of funds were transferred to "unidentified co-conspirators

16

at an unknown time in an unknown way, and that those unnamed co-conspirators then, at an unknown time and in an unknown way, transferred the funds." *Omnipol AS*, 32 F. 4th at 1308. The Eleventh Circuit held that the complaint was "silent" as to "key details" of the transfers underpinning the alleged unjust enrichment, and thus, the claim did not comply with Rule 9(b). *Id.* Specifically, the plaintiff failed to allege who transferred what funds and when. *Id.*

The same is true here, where Plaintiffs imply that they paid the PLCs (not Wells Fargo), and their funds were subsequently used by the PLCs to pay Wells Fargo fees and interest. Just as in *Omnipol*, though, Plaintiffs fail to allege the "key details" of the allegedly fraudulent transactions, such as when their funds were transferred to the Wells Fargo accounts, which accounts (of the 29 total PLC accounts) were involved, how long the funds remained in each account, whether any fees were charged to the accounts while Plaintiffs' funds were in them, any other intervening deposits and withdrawals in the accounts, and, ultimately, how much in fees were supposedly taken out of Plaintiffs' specific funds. Such information is particularly vital here, where Plaintiffs make much of alleging that money was transferred in and out of the accounts at Wells Fargo in rapid succession. *See* Am. Compl. ¶¶ 158(a)–(d); 161. But there are no allegations to discern whether any fees were taken out of *Plaintiffs'* funds. This lack of particularity concerning the transfer of Plaintiffs' funds renders their unjust enrichment claim insufficient as a matter of law under Rule 9(b).

### B. The unjust enrichment claim fails because adequate consideration exists.

Moreover, the Amended Complaint fails to state an unjust enrichment claim because its allegations establish that Wells Fargo in fact provided contracted-for services for which the fees at issue were paid. "It is settled law in Florida that when a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Wiand*, 86 F. Supp. 3d at 1332 (citation omitted); *Biondi v. Branch Banking & Trust Co.*, 2018 U.S. Dist.

17

LEXIS 147363, at *22 (S.D. Fla. Aug. 28, 2018).  The Amended Complaint alleges that Wells Fargo "provided banking services" to the PLCs, Am. Compl. ¶ 201, which paid Wells Fargo account services fees and interest in return.  Am. Compl. ¶ 251.  This establishes that Wells Fargo received the challenged account services fees in a bargained-for exchange.  *See Wiand*, 86 F. Supp. 3d at 1332 ("In sum, the Bank agreed to provide account services and loans to the [schemers], in exchange for which those entities agreed to pay account service fees and interest.  The Receiver's claim for unjust enrichment therefore fails as a matter of law").

In other words, the PLCs received precisely the banking services for which they paid fees to Wells Fargo.  Thus, the unjust enrichment claim fails.

## **CONCLUSION**

Plaintiffs have failed to meet the standards of Florida law and the binding precedent of the Eleventh Circuit to allege viable claims against Wells Fargo for aiding and abetting and unjust enrichment.

WHEREFORE, Wells Fargo therefore respectfully requests the Court dismiss the entire Amended Complaint with prejudice and grant such other and further relief to Wells Fargo as the Court deems just and proper.

Dated: August 12, 2024

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Emily Y. Rottmann*

Emily Y. Rottmann
Florida Bar No. 93154
erottmann@mcguirewoods.com
clambert@mcguirewoods.com
flservice@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

Jarrod D. Shaw (*admitted pro hac vice*)
jshaw@mcguirewoods.com
Nellie E. Hestin (admitted *pro hac vice*)
nhestin@mcguirewoods.com
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Phone: (412) 667-6000

Mark W. Kinghorn *(pro hac motion forthcoming)*
mkinghorn@mcguirewoods.com
Zachary L. McCamey *(pro hac motion forthcoming)*
zmccamey@mcguirewoods.com
William O. L. Hutchinson *(pro hac motion forthcoming)*
whutchinson@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC  28202-2146
Tel: (704) 343-2000


*Attorneys for Defendant Wells Fargo Bank, N.A.*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2024, a true copy of the foregoing was filed

with the Court using the CM/ECF system, which will send notice to counsel of record.


*/s/ Emily Y. Rottmann*
Attorney
