UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:24-cv-22142-DPG

FANNY B. MILLSTEIN and
MARTIN KLEINBART,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

**DEFENDANT WELLS FARGO BANK, N.A.'S
REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    Plaintiffs Fail to Plead Aiding and Abetting Claims. ..................................................... 2

        A.  Plaintiffs Conflate Wells Fargo's Roles as Trustee, Securities Intermediary, and Depository Bank, but Fail to Allege Actual Knowledge. ....................................................................... 3

        B.  Plaintiffs' Allegations Concerning Alleged Atypical Transactions Do Not Adequately Demonstrate Knowledge. ........................................................................... 6

        C.  Plaintiffs Fail to Allege Affirmative Assistance of the Alleged Scheme. ..................... 8

    II.   Plaintiffs Fail to State a Claim for Unjust Enrichment .................................................. 9

        A.  Plaintiffs Rely on A Distinguishable Case for Their Argument That Wells Fargo Received A Direct Benefit. ................................................................................................... 9

        B.  An Unjust Enrichment Claim Fails When Adequate Consideration Is Provided *To Someone*, Not Just To The Plaintiff Alleging Unjust Enrichment. ........................................ 10

CONCLUSION ........................................................................................................................ 10

## **INTRODUCTION**

Plaintiffs' Opposition (D.E. 30) fails to rebut the showing Wells Fargo made in its Motion to Dismiss ("Motion")[1] that Plaintiffs fail to state a viable claim for relief. With respect to the aiding and abetting claims, Plaintiffs acknowledge they have no direct evidence that Wells Fargo knew anything about the Perpetrators' fraud, assisted it in any way, or derived any benefit other than run-of-the-mill account and service fees. Plaintiffs insist they do not need any direct evidence, but even the allegations of circumstantial evidence on which they rely do not support the claims they assert.

Plaintiffs' house of cards is built in large part on the unsupportable foundation of Wells Fargo's role as ILIT trustee. What Plaintiffs hope the Court will ignore, but what is apparent on the face of their pleading, is that Wells Fargo ceased providing services in that role *years* before any of the fraudulent conduct allegedly began. Plaintiffs similarly make much of the fact that Wells Fargo, as banker to certain of the implicated businesses, supposedly mishandled account-opening paperwork, asking that the Court accept the implausible notion that the Perpetrators would have simply abandoned their plot had the bank been more fastidious in seeing that all forms were properly prepared. And of course Plaintiffs trot out their laundry list of deposit account activity they insist had no purpose other than to further the fraud, ignoring that the allegations do not amount to indicia of fraud. Plaintiffs' house of cards falls once irrelevant facts and hyperbolic rhetoric are removed from consideration.

Plaintiffs' unjust enrichment claim fails because Plaintiffs rely on an inapposite case yet ignore the many authorities holding that an unjust enrichment claim fails where, as here, a benefit was conferred in exchange for the fee paid, even if the beneficiary was not the plaintiff.

---

[1] Capitalized terms retain the same designations used in the Motion unless stated otherwise.

For these reasons and those stated in the Motion, the Court should grant Wells Fargo's Motion and dismiss Plaintiffs' Amended Complaint in its entirety.

## ARGUMENT

### I. Plaintiffs Fail to Plead Aiding and Abetting Claims.

In their Opposition, Plaintiffs rely on allegations of circumstantial evidence that fails to show actual knowledge of the alleged Ponzi scheme, conflating Wells Fargo's various roles and repeating conclusory allegations regarding Wells Fargo's supposed assistance. Plaintiffs, however, fail to demonstrate that their aiding and abetting claims are supported by allegations of relevant facts, direct or circumstantial.

"[W]hile actual knowledge may be shown by circumstantial evidence, the circumstantial evidence must demonstrate that the aider and abettor actually knew of the underlying wrongs committed." *Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014). But here, like in *Perlman*, Plaintiffs "allege[] a multitude of atypical transactions and procedural oddities," but such allegations "fall short of raising a plausible inference that Wells Fargo actually knew that [the Perpetrators were] engaging in fraudulent activity. At most they list facts that could arouse suspicions, and are not sufficient to trigger any obligation by Wells Fargo to investigate." *Id.* at 993–94. And while these alleged red flags "may have put the bank[ ] on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge" that Plaintiffs were being defrauded through a Ponzi scheme. *Id.* at 994.

Plaintiffs' reliance on *Cabot E. Broward 2 LLC v. Cabot* to suggest they have met their pleading burden is misplaced. 2016 U.S. Dist. LEXIS 189663 (S.D. Fla. Dec. 2, 2016). The circumstantial evidence alleged there in support of an aiding and abetting claim against a CPA went well beyond the allegations here. There, the fraudster asked the defendant CPA on two

2

occasions "how to manipulate Investor Reports to hide amounts owed by Cabot Investments to Plaintiffs." *Id.* at *15. When the CPA asked the fraudster why he deleted line items in a balance sheet, the fraudster admitted that the balance sheet "could not reflect the sums owed by Cabot" to the plaintiffs. *Id.* at *14. The court concluded that these were "sufficient allegations that plausibly allege facts that would allow a finder of fact at trial to make a finding of actual knowledge on the part of the Defendant [CPA]." *Id.* There are no similar allegations showing knowledge here.

### A. Plaintiffs Conflate Wells Fargo's Roles as Trustee, Securities Intermediary, and Depository Bank, but Fail to Allege Actual Knowledge.

Plaintiffs attempt to meet the high burden of pleading actual knowledge of the fraud by claiming that "[a]s Trustee, Securities Intermediary, and depository bank, Wells Fargo knew there were no legitimate contracts or goods/services to justify these transfers." Opp'n at 5. But such attempt fails because Wells Fargo's role as trustee ended before the fraudulent activity allegedly began, and Plaintiffs' conclusory allegations do not show that Wells Fargo's role as securities intermediary or depository bank did, or even could have, provided it with knowledge of the fraud.

The time period of the alleged Ponzi scheme does not overlap with the period when Wells Fargo served as ILIT trustee. Plaintiffs allege that Wells Fargo served as trustee "[a]s early as 2009," Am. Compl. ¶ 50, and resigned as trustee in 2012. Am. Compl. ¶ 62. While Plaintiffs now suggest that the scheme started in 2009, *see* Opp'n at 1, the first factual allegations of Ponzi scheme activity occurred in 2015. *See* Am. Compl. ¶¶ 139, 144, 148, 157–158, 161. It is thus irrelevant, for example, that the ILIT structure was "atypical," (Opp'n at 10), since Wells Fargo exited its ILIT role years before fraudulent activity commenced. Plaintiffs do not and cannot allege that Wells Fargo could have foretold the fraudulent scheme that commenced years after it ceased serving as trustee. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (finding that plaintiffs failed to plead facts that the bank had actual knowledge of underlying fraud

3

"at the time it allegedly facilitated transfers of proceeds of the fraud."); *Gold v. First Tenn. Bank, N.A. (In re Taneja)*, 2012 Bankr. LEXIS 3554, at \*58 (E.D. Va. Jul. 30, 2012) (finding credible the testimony from individuals with knowledge of the bank's practices where they stated "that at the time of each transfer, the bank did not have any actual knowledge of the fraud [the wrongdoer] was perpetrating on it"). Plaintiffs' extensive reliance in their Opposition on Well Fargo's role as ILIT trustee is telling and can only be understood as an effort to distract from the paucity of allegations pertaining to the only two roles that are actually relevant.

Turning to those roles, Plaintiffs fail to adequately allege that Wells Fargo gained actual knowledge of the alleged fraud in its role as a securities intermediary for the Centurion Companies. A securities intermediary has a limited role that "is akin to [the role] of escrow agent…[that] provides fee-based administrative functions." *United States v. Benderoff*, 2022 U.S. Dist. LEXIS 163960, at \*20 (E.D. Mich. Sept. 12, 2022); *Sun Life Assur. Co. v. Wells Fargo Bank, NA*, 2016 U.S. Dist. LEXIS 163186, at \*3 (D.N.J. Nov. 17, 2016) ("The duties of the securities intermediary is to act as a custodian, verification agent, and escrow agent of a life insurance policy.") Plaintiffs nonetheless recklessly ascribe knowledge of the scheme to Wells Fargo in this role but cite no specific facts to support their accusations. That Wells Fargo might have known investors funds were being used to acquire life insurance policies, *see* Opp'n at 10–11, shows only that the bank, in its later role as securities intermediary, understood the basic structure of the Perpetrators' investment vehicle, not that the vehicle would be used to facilitate a fraud. Plaintiffs further insist Wells Fargo must have known that the policies for which it had responsibility as securities intermediary were the same policies that, many years earlier, had been pledged as collateral to support payment obligations to the investors. (Opp. at 4, 11). But there is no factual basis for Plaintiffs' contention, since they do not, and cannot, allege Wells Fargo, as ILIT trustee, was

4

required to or did track the policies and had no way of knowing which policies ended up serving as collateral for the notes sold to Class members. Unlike other cases where plaintiffs adequately pled actual knowledge, there are no allegations here that Wells Fargo participated in or vouched for the legitimacy of the alleged fraudulent transactions. *See, e.g., Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014) (allegations that bank employees sent letters vouching for the trustee were sufficient to allege actual knowledge of fraud on the part of the bank).

Wells Fargo's role as depository bank was limited to processing routine banking transactions, as depository banks generally have no knowledge of what is being purchased with funds from its customers' accounts. *See Sec. Investor Prot. Corp. v. Capital City Bank (In re Meridian Asset Mgmt., Inc.)*, 296 B.R. 243, 262 (Bankr. N.D. Fla. 2003) (depository banks undertake "no special duties" relating to its customers' accounts). Wells Fargo, in its role as banker, thus would not have known what—life insurance policies or otherwise—the Perpetrators were purchasing using money from their bank accounts. And again, while there are conclusory allegations, there are no *factual* allegations showing that Wells Fargo had actual knowledge of what the Perpetrators were doing with the funds that flowed through the PLCs' accounts. Indeed, unlike other cases finding actual knowledge, there are no allegations here that Wells Fargo was alerted to fraudulent activity in the PLCs' accounts, conducted an investigation or determined there was a fraudulent scheme, and then allowed the scheme to continue. *Cf. Pearson v. Deutsche Bank AG*, 2023 U.S. Dist. LEXIS 49783, at *41 (S.D. Fla. Mar. 23, 2023) (finding such allegations sufficient to allege actual knowledge on the part of the bank).

Plaintiffs' insistence that Wells Fargo must have known about the fraud by virtue of the different roles it held does not hold water when the timing and actual duties associated with those roles are accounted for.

5

### B. Plaintiffs' Allegations Concerning Alleged Atypical Transactions Do Not Adequately Demonstrate Knowledge.

Plaintiffs' Opposition regurgitates the Amended Complaint's laundry list of purportedly atypical transactions but fails to credibly connect them to actual knowledge of a Ponzi scheme. *See* Opp'n at 9–12. These allegations include numerous transfers among the accounts at Wells Fargo and high dollar transactions. Am. Compl. ¶ 161. Based on these transactions, Plaintiffs conclude that there is both direct and circumstantial evidence of Wells Fargo's actual knowledge of the Ponzi scheme. Such transactions alone, however, do not establish actual knowledge under Florida law, particularly where, as here, a large number of transactions involving high dollar amounts was entirely consistent with the nature of the underlying insurance business and the significant number of accounts required to support the business. *See, e.g., Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (holding that allegations of "numerous deposits, withdrawals, and wire transfers involving large amounts of money" and claims that transactions were "atypical," and therefore the bank "should have known" of the scheme were "insufficient under Florida law to trigger liability"); *Otto Candies, LLC v. Citigroup, Inc.*, 2023 U.S. Dist. LEXIS 168612, at *22–23 (S.D. Fla. Aug. 25, 2023) (plaintiffs did not sufficiently allege that Citigroup had actual knowledge by merely suggesting that Citigroup "disregarded red flags or atypical activities or transactions"); *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014) (alleging that one "ignore[d] thousands of red flag transactions" is "insufficient to establish knowledge."). Although Plaintiffs rely on authorities involving claims against fiduciaries, *see, e.g.,* Opp'n at 7–8, Wells Fargo was not a fiduciary in any of its roles here and therefore had no duty to scrutinize the accounts' cash flows. *See Biondi v. Branch Banking & Trust Co.*, 2018 U.S. Dist. LEXIS 147363, at *7–8 (S.D. Fla. Aug. 28, 2018) (collecting cases holding that there is "no duty under Florida law to investigate transactions by an authorized user").

Plaintiffs' reliance on *Gevaerts* for the proposition that "Wells Fargo's decision to ignore thousands of red flag transactions … sufficiently establishes its actual knowledge of the underlying Scheme" is misplaced. Opp'n at 13. In *Gevaerts*, the court described a unique circumstance in which overdrafts were indicative of knowledge of fraud by a depository bank. 56 F. Supp. 3d at 1335. The court denied the bank's motion to dismiss after finding that the accounts at issue were *attorney trust accounts*, which never have a non-fraudulent reason to be overdrawn. *Id.* at 1341. That is a far cry from the non-fiduciary deposit accounts at issue here, in which grace notices, significant account activity, and large transfers are not clear indications of fraud. Moreover, the bank employee in *Gevaerts* was alleged to have vouched for the fraudster in letters while omitting that the fraudster mishandled investor funds. *Id*. at 1342. No such allegations exist here.

Finally, Plaintiffs also misplace reliance on *Perlman v. Bank of America, N.A.* for the proposition that "alleging atypical transactions and transactions that lack a business justification can itself support an inference of knowledge on the part of the Bank." 2011 U.S. Dist. LEXIS 161084, at *23 (S.D. Fla. Dec. 21, 2011); Opp'n at 9–10. There, the court found that the very existence of the investment club accounts placed the bank on notice of the fraudulent activity occurring within these accounts. *Perlman*, 2011 U.S. Dist. LEXIS 161084, at *23 (observing that the "opening [of] investment club accounts is presumably atypical given that such accounts are allegedly prohibited under the Bank's internal policies"). Just as the overdrafts of the attorney trust accounts in *Gevaerts* had no legitimate business justification and provided an inference of actual knowledge on the face of the transaction, so too did the existence of investment club accounts that were expressly prohibited by the bank's policies. *Id.*; *Gevaerts*, 56 F. Supp. 3d at 1341–42. Here, Plaintiffs fail to allege any transaction in the PLCs' accounts that had no business justification and was necessarily indicative of the underlying fraud as in *Perlman* and *Gevaerts*.

### C. Plaintiffs Fail to Allege Affirmative Assistance of the Alleged Scheme.

Plaintiffs attempt to save their aiding and abetting claims by contorting their allegations to manufacture the false impression of affirmative assistance. Plaintiffs first argue that Wells Fargo mispresented in the Securities Account Agreements that "there were no 'liens' on the STOLIs" when "Wells Fargo knew the Class had a security interest in the STOLIs." Opp'n at 17. While Plaintiffs maintain that Wells Fargo knew the Class had first priority lien rights, *see* Am. Compl. ¶ 61, there are no factual allegations showing that Wells Fargo could discern whether there was overlap between the policies that were the subject of the representation it made as securities intermediary and the policies involved in the ILITs for which it had earlier served as trustee.[2]

Plaintiffs further argue that "Wells Fargo's manipulation of its policies" allowed the scheme to continue, Opp'n at 12, pointing to allegations concerning Wells Fargo pre-filling account applications, opening accounts without the necessary paperwork, and sending blank forms to account holders for signature. Opp'n at 4–5; Am. Compl. ¶¶ 146, 148. Plaintiffs cannot explain how assistance with the ministerial tasks of opening run-of-the-mill deposit accounts substantially assisted the scheme. Would the Perpetrators have simply abandoned their carefully orchestrated plan had Wells Fargo insisted that the Perpetrators' employees complete all blanks on account-opening forms? Plaintiffs cannot show that the mere opening of deposit accounts, which the Perpetrators presumably could have done by completing routine paperwork at any of dozens of financial institutions, in any way materially facilitated the fraud.

Without allegations showing that Wells Fargo provided substantial affirmative assistance in furtherance of the scheme, Plaintiffs' actual knowledge burden is subject to a higher standard.

---

[2] Again, Plaintiffs do not, and cannot, allege that, as ILIT trustee, Wells Fargo had any involvement in the Perpetrators' program to securitize life insurance policies. As a result, it did not know which, if any, of the policies involved in its ILIT trustee role had been pledged as security for the Perpetrators' payment obligations to members of the Class.

8

In *Perlman*, the court found that the allegations were sufficient to show that the bank affirmatively assisted the Ponzi scheme and, as a result, the "allegations need not satisfy the high 'conscious intent' standard," which requires "scienter" on the part of the aider-and-abettor. 2011 U.S. Dist. LEXIS 161084, at *23 (quoting *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 U.S. Dist. LEXIS 25740, at *49 (S.D. Fla. Mar. 31, 2008)). Here, without such alleged affirmative assistance, Plaintiffs must allege specific facts showing that Wells Fargo exhibited "a 'conscious and specific motivation' to aid the fraud." *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 U.S. Dist. LEXIS 25740, at *49 (S.D. Fla. Mar. 31, 2008) (quoting *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991)). Plaintiffs have alleged *no* motivation, much less a conscious and specific one, to facilitate the fraud here. And even if Plaintiffs sufficiently alleged that Wells Fargo "chose to ignore 'atypical activities,'" which they have not, such allegations "fail[] to sufficiently allege the requisite degree of scienter." *Id.* at *1.

## II. Plaintiffs Fail to State a Claim for Unjust Enrichment

### A. Plaintiffs Rely on A Distinguishable Case for Their Argument That Wells Fargo Received A Direct Benefit.

Plaintiffs misplace reliance on *Williams v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 105513 (S.D. Fla. Sept. 19, 2011) in support of their argument that Wells Fargo received a direct benefit from Plaintiffs because they deposited funds into the Wells Fargo accounts. The plaintiffs in *Williams* specifically alleged that the direct benefits to the bank took the form of "kickbacks and/or commissions, which were taken directly from the insurance premiums paid by Plaintiffs." *Id.* at *28. These are identifiable amounts that can be directly traced based on the allegations in the complaint. Unlike in *Williams*, Plaintiffs here fail to allege that their specific funds were taken by Wells Fargo as kickbacks or fees, and they do not even attempt to trace their funds to Wells Fargo's remuneration. *See Omnipol AS v. Multinational Defense Services LLC*, 32 F. 4th 1290,

9

1308 (11th Cir. 2022) (holding that plaintiffs failed to plead unjust enrichment by generally alleging that "some portion" of funds were transferred to "unidentified co-conspirators at an unknown time in an unknown way, and that those unnamed co-conspirators then, at an unknown time and in an unknown way, transferred the funds.").[3] Thus, *Williams* does not salvage Plaintiffs' unjust enrichment claim.

### B. An Unjust Enrichment Claim Fails When Adequate Consideration Is Provided *To Someone*, Not Just To The Plaintiff Alleging Unjust Enrichment.

Plaintiffs argue that because the proposed Class members were never in privity with Wells Fargo and did not receive any benefit in exchange for Wells Fargo's banking services, they can maintain a claim for unjust enrichment. But as the court held in *Williams v. Wells Fargo*, "[w]hen a defendant has given adequate consideration *to someone* for the benefit conferred, a claim of unjust enrichment fails." 2011 U.S. Dist. LEXIS 105513 (S.D. Fla. Sept. 19, 2011) (emphasis added); *see also Hayden v. Urvan*, 2024 U.S. Dist. LEXIS 157221, at *24 (S.D. Fla. Aug. 27, 2024) (collecting cases holding that consideration merely needs to be "to someone" to preclude unjust enrichment). Plaintiffs cite no support for the premise that privity is *required* to constitute adequate consideration for unjust enrichment or that consideration must have been given to the plaintiffs. Plaintiffs' unjust enrichment claim thus fails.

### CONCLUSION

WHEREFORE, for the above reasons and authorities and those set forth in the Motion, Wells Fargo requests that the Court grant the Motion and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice and grant such further relief as this Court deems just and proper.

---

[3] As shown in Wells Fargo's Motion, an unjust enrichment claim that "'sound[s] in fraud,'" just as here, is "subject to Rule 9(b)'s requirements" and thus must be pled with particularity. *Omnipol AS v. Multinational Defense Services LLC*, 32 F. 4th 1298, 1307 n.11 (11th Cir. 2022) (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019)).

Dated: September 27, 2024

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Emily Y. Rottmann*
Emily Y. Rottman
Florida Bar No. 93154
erottmann@mcguirewoods.com
clambert@mcguirewoods.com
flservice@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

Jarrod D. Shaw (admitted *pro hac vice*)
jshaw@mcguirewoods.com
Nellie E. Hestin (admitted *pro hac vice*)
nhestin@mcguirewoods.com
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Phone: (412) 667-6000

Mark W. Kinghorn (admitted *pro hac vice*)
mkinghorn@mcguirewoods.com
Zachary L. McCamey (admitted *pro hac vice*)
zmccamey@mcguirewoods.com
William O. L. Hutchinson (admitted *pro hac vice*)
whutchinson@mcguirewoods.com
201 N. Tryon St., Suite 3000
Charlotte, NC 28202-2146
Tel: (704) 343-2000

*Attorneys for Defendant Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on September 27, 2024, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to counsel of record.

                                          */s/ Emily Y. Rottmann*
                                                  Attorney